IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Philip A Brimmer

Civil Action No. 14-cv-02478-PAB

BAKARI DARNELL MACKEY,

     Applicant,

v.

COZZA-RHODES, Warden,

     Respondent.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

     This matter comes before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] (the "Application") filed *pro se* by Applicant, Bakari Darnell Mackey.  On January 5, 2014, Respondent was ordered to show cause why the Application should not be granted.  On January 23, 2015, Respondent filed a Response to the Order to Show Cause (the "Response"), Docket No. 17, and Exhibits in Support, Docket No. 18.  On February 9, 2015, Mr. Mackey filed a Reply (the "Reply").  Docket No.19.  On March 12, 2015, Applicant filed a Motion for Leave of Court to Expand the Record, Docket No. 20, to which Respondents filed a Response on June 18, 2015.  Docket No. 22.  After reviewing the pertinent portions of the record in this case, including the Application, the Response, the Reply, the Motion to Expand and Response thereto, the Court concludes that the Application should be denied.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

Mr. Mackey is a federal prisoner currently in the custody of the United States Bureau of Prisons ("BOP") at the Englewood Forest City Low Federal Correctional Institution in Forrest City, Arkansas.  While he was in custody at the Federal Correctional Institution at Florence, Colorado, Mr. Mackey filed this action challenging the validity of a prison disciplinary conviction he incurred while he was incarcerated at the Federal Correctional Institution in Safford, Arizona.  Specifically, on January 6, 2014, Applicant received an incident report for stalking (Code 225) and being in an unauthorized area (Code 316).  On January 6, 2014, Applicant was issued a copy of Incident Report No. 2534074 and made the following statement:  "I never stalked or harassed Officer Riney and she never warned me to stay out of the dorm and in some cases I have been allowed to go into the dorms."  Applicant requested the presence of three witnesses that would be able to provide information on his behalf.  On January 24, 2014, Discipline Hearing Officer Joseph Devore conducted a DHO hearing in regard to the above incident report.  Before the hearing, Applicant requested the assistance of a staff representative, which was granted.  Applicant's staff representative appeared before the DHO and her statement was documented in the DHO report.  At the DHO hearing, Applicant waived the appearance of two witnesses and the third witness refused to attend.  Applicant requested video footage be reviewed during the DHO hearing.  After investigation, it was determined that the video footage no longer existed regarding the incident, as it is only kept for fourteen days.  The DHO found that Mackey committed the prohibited acts based on the following evidence:

2

The DHO finds on 1-5-2014, at 11:40 a.m., inmate Mackey, Reg. No. 21282-001, committed the prohibited act of Stalking, Code 225.  To make this finding, the DHO relied on the following:

The reporting staff member's first hand eyewitness account that on 12-3-2013, at 6:45 p.m., after having been previously warned you and she are not friends, you, inmate Burton,[1] approached the reporting staff member and asked her to make rounds at 7:30 p.m.  You were told not to "start with her."  During the rest of the shift you continued to pass by her office, approximately 8 times in a three hour period.  The following day you approached her about refilling a prescription that had no refills left, that was initially filled three months prior to that day.

The DHO considered your request to have the video reviewed.  The DHO was informed during the DHO hearing, in the presence of the charged inmate, by the hearing facilitator, Mr. Zuniga, that there was no video evidence available to consider.  Mr. Zuniga contacted the SIS department and confirmed the absence of any video evidence and documented the explanation in an email submitted to the DHO.

. . .

You claimed your duties in the education department require you to pass out certificates and other materials to inmates within all of the housing units. Based on your staff representative's statement, the DHO finds the evidence supports your claim that you do in fact conduct educational business within different housing units.  You provided no evidence that on this occasion you were authorized by Ms. Riney, the housing unit officer, to be in a unit you did not belong in, Saguaro B.  In fact you denied being in the unit at all. You said during the hearing that even though you enter the units on a regular basis, you needed authorization to enter prior to going in.  There is no evidence Ms. Riney provided you with permission to enter Saguaro unit.

The DHO considered your denial.  You said you were not stalking her.  You claimed she had never told you that your personal conversations were unwanted.  You said she never told you to stop.  You acknowledged you were approached by Officer Salyer who instructed you to stop approaching Ms. Riney and attempting to enter into personal conversations. This is supported by Salyer's memorandum.  You alleged Riney later approached you and told you Salyer approached you on his own and not by her request. Riney's memorandum contradicts this claim.  She wrote in her memorandum that not only did she tell you her personal life is none of your business, she

---

[1]  The Court finds that the reference to "Burton" is a typographical error.

indicated she informed Salyer of your unwanted advances on the prior occasion in November 2013. She also became aware that Salyer had intervened on her behalf again telling you your behavior is inappropriate and unwanted. As a result of Salyer's counseling session, you later apologized to her. You claimed she said it wasn't her desire to have Salyer intervene. The DHO finds her credible. Salyer supports her claim in his memorandum that she approached him about your inappropriate behavior. The DHO can find no reason whatsoever why a staff member would inform another staff member about an inmate attempting to engage in personal conversations with her, unless it was to seek assistance and support in stopping the behavior. Salyer instructed you to stop your personal approaches towards Riney in November 2013. This was made clear in the Riney and Salyer memorandums as well as your own admission during the hearing. The DHO finds your claim Riney told you it was not by her request that Salyer intervened less than credible. The facts and evidence weigh strongly that Riney sought Salyer's intervention, which he provided. You claimed it was her that initiated the personal conversations with you. The DHO again finds that less than credible. Had it been her who initiated the conversations, she would not have had to seek peer help in stopping your approaches. She could have merely stopped conversing with you. The facts and evidence as well as your own statement support the element that you had been put on notice that your behavior was unwanted, inappropriate and must stop. The DHO considered your statement that you did not enter the reporting staff member's housing unit the day of the alleged incident. You claimed you did not make the statements attributed to you in the incident report. You said you did not ask her if you were wasting your time, emotionally and mentally, the day prior to the incident on 1-5-2014. You denied that on 1-5-2014, after you approached her saying you "just wanted to talk" that she once again warned you about your behavior and confirmed that you had been warned several times to stay away from her. You said you were approached by inmate Bunton, Reg. No. 23317-112, and told to "back off" Ms. Riney. You said you did approach Ms. Riney and told her you wanted to confirm that it was her that wants you to stay away from her and not just inmate Bunton. This indicates it was not only Ms. Riney and Mr. Salyer but also another inmate who was aware of your inappropriate attempts to contact Ms. Riney in a personal manner. When weighing credibility, the DHO considered your statement that you and Ms. Riney have had no negative interaction with you prior to this incident report. The DHO could find no motive that Ms. Riney might have to cause her to misrepresent what occurred in a light unfavorable to you, whereas you do have an incentive to misrepresent what occurred to avoid the consequences of your actions. The DHO found you lacked credibility when you stated Ms. Riney was the reason Mr. Salyer counseled you. Salyer's and Riney's memorandums corroborate the claim Ms. Riney sought assistance from another staff member to get you to stop stalking her. The DHO finds you were not a credible witness. The DHO finds you were in

the incorrect unit without staff authorization.  In her memorandum, Ms. Riney was very specific in describing in your actions of entering her unit and then talking to an inmate.  She told you to depart the unit as it was not your unit.  She said you left Saguaro unit behind her and asked to talk to her.  The conversation was based on your desire to be told directly from her to keep your distance from her.  She reminded you that you had been warned in the past to stay away from her and not engage her in conversation.  During the hearing, you were elusive when asked if you were in the unit.  Your initial response was Ms. Riney left before you and the report could not have been technically correct when it stated she observed you leave the unit.  Later you stated you were never in the unit, contradicting your claim she left BEFORE you did and couldn't have observed you leave.  The DHO finds you are not reliable or credible.  The DHO finds the greater weight of evidence supports the charge you were in the wrong unit without staff authorization and you approached Ms. Riney in a personal, inappropriate manner after having been informed your behavior was inappropriate and unwanted and to stop your personal advances.

The DHO read and considered your denial . . . that you made during the Lieutenant's Investigation of the incident report.  However, you did not deny being in the unit during the incident report investigation.  You just claimed that Ms. Riney had never informed you to stay out of the dorms in the past and in some instances you have been allowed to enter the dorms.  This furthers the DHO's disbelief in your current claim you did not enter the unit.  You did deny stalking Ms. Riney consistent with your current defense.  The DHO does not find you, or your denial, that you didn't stalk Ms. Riney, credible based on the above weighing of statements and evidence.

The DHO read the UDC summary contained in PART II of the incident report as well as memorandums from the two UDC members (Aguilar, Ozeta).  The memorandums indicated you did not want to answer questions posed to you.  The UDC summary and staff memorandums indicated you were uncooperative and somewhat disruptive during the process.  There was nothing, exculpatory or otherwise, regarding the merits of the case that was contained within the UDC statements.

Based on the greater weight of evidence, the DHO finds you committed the prohibited act of Code 225, Stalking.  Specifically, you had been warned about this type of behavior towards this specific staff member in the past and to stop.  You continued to approach her in inappropriate ways, attempting [to] engage her in personal conversations not related to her duties as a correctional staff member.

Based on the greater weight of evidence, the DHO finds you committed the prohibited act of Code 316, Being In An Unauthorized Area Without Staff

Authorization.  Specifically, you had entered a unit you did not belong in without staff authorization.  The DHO considered your claim you enter units that you are not assigned to due to your duties in education.  You acknowledged you did not have carte blanche permission but had to be authorized by staff on a per incident basis.  You denied being in the unit, which the DHO does not believe, and therefore deny seeking authorization to be in the unit.

Docket No. 1, pp. 11-16.

Following the DHO hearing, Mr. Mackey was sanctioned with the loss of phone and commissary privileges for six months and the loss of twenty-seven days of good-time credit.  Docket No. 1, p. 15.

On September 5, 2014, Mr. Mackey filed an action in this court seeking expungement of his disciplinary conviction and restoration of twenty-seven days of good-time credit.  Docket No. 1 at 6.  He claims that he was denied due process by not being able to present the video evidence and that he was denied due process by not having a psychological review and/or being able to present psychological evidence.

## II.  STANDARD OF REVIEW

The Court must construe the Application and the Reply liberally because Mr. Mackey is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811

(10th Cir. 1997).  Habeas corpus relief is warranted only if Mr. Mackey "is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2241(c)(3).

## III.  DISCUSSION

The Fifth Amendment protects federal prisoners against the deprivation of liberty

or property without due process of law.  To sufficiently plead a due process claim, Mr.

Mackey must allege facts showing: 1) that he was deprived of a liberty or property

interest and 2) that the procedures required prior to such a deprivation were not

properly observed. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("those who seek to

invoke [the due process clause's] procedural protection must establish that one of these

interests is at stake").

In *Wolff v. McDonnell*, 418 U.S. 539, 555–57 (1974), the Supreme Court held

that prisoners have a liberty interest in receiving good time credits that cannot be

deprived in a prison disciplinary proceeding without procedural due process protections.

Notwithstanding, the Court held that prison disciplinary proceedings "are not part of a

criminal prosecution, and the full panoply of rights due a defendant in such proceedings

does not apply." *Wolff*, 418 U.S. at 556.  If a protected liberty interest is implicated,

procedural due process requires that a prison inmate facing disciplinary charges be

provided: 1) the right to appear before an impartial decision-making body, 2) twenty-four

hour advance written notice of the charges, 3) an opportunity to call witnesses and

present documentary evidence, provided the presentation of such does not threaten

institutional security or correctional goals, 4) assistance from an inmate representative,

if the charged inmate is illiterate or if the complexity of the issue makes it unlikely that

the inmate will be able to collect and present the evidence necessary for an adequate

comprehension of the case, and 5) a written decision by the fact finders as to the

evidence relied upon and the rationale behind their disciplinary action. *Id*. at 563-71.  In

addition, procedural due process requires that "the findings of the prison disciplinary

board are supported by some evidence in the record."  *Superintendent v. Hill*, 472 U.S.

445, 454 (1985) (internal citation and quotation marks omitted).

In the instant case, the Court finds that Applicant was afforded each of the due

process protections required by *Wolff* in connection with the disciplinary proceeding at

issue in this action.  Specifically, he received the opportunity to appear before a DHO,

he was provided with written notice of the charges against him, and a copy of his rights

and notice of the disciplinary hearing were delivered to him more than twenty-four hours

before his hearing.  Also, contrary to Applicant's assertions, he was provided the

opportunity to call witnesses and afforded the right to staff representation.  Finally, the

BOP provided Applicant with the DHO's report, which provided a thorough written

explanation of the DHO's decision, as well as the evidence relied upon and the

rationale for the decision.

Moreover, the DHO's decision is supported by some evidence.  The

determination of whether that standard is satisfied "does not require examination of the

entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence.  Instead, the relevant question is whether there is any evidence in the record

that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at

455-56.  Under *Hill*, judicial review of a prison disciplinary decision is limited to ensuring

that the prisoner was afforded certain procedures, the action against him was not

arbitrary, and that the ultimate decision has some evidentiary support.  *Id*. at 457.  The

Court cannot conduct a *de novo* review of the evidence and re-try the disciplinary case.

In this case, Mr. Mackey offers nothing to show that the disciplinary case was

falsified or fabricated beyond his own assertion that it was so.  The fact that the DHO

believed the testimony of the correctional officers rather than his own statements does

not show a violation of due process; even if the DHO erred, in the context of prison

disciplinary proceedings, the Constitution requires due process, not error-free

decision-making. *McCrae v. Hankins*, 720 F.2d 863, 868 (5th Cir. 1983).

Mr. Mackey states that his due process rights were violated because he was not

allowed to present the videotape evidence that would show that he was not in the area

at the time.  However, the DHO investigated the request for the videotape and was

informed that the footage could not be reviewed because it was past fifteen calendar

days.  Docket No. 18 at 20.  Because the incident occurred on January 5, 2014 and the

request to the DHO for the surveillance tape was not made until January 24, 2014, the

tape no longer was available.  *See Bougue v. Vaughn,* 439 F. App'x 700 (10th Cir.

2011) (no due process violation where videotape evidence was not available).

Here, Applicant provides evidence that he requested the video evidence on

January 13, 2014 during his UDC hearing.  Docket No. 19 at 9.  While it is somewhat

troubling to the Court that no effort was made to secure the videotape while it still was

available, its absence from the hearing does not result in a violation of due process.

Mr. Mackey was permitted to argue that he was not in the unit at the time at his hearing.

However, as found by the DHO, there is more than "some evidence" in the record to

conclude that Mr. Mackey acted in the prohibited conduct of being in an unauthorized area and stalking after having been previously warned to stop such conduct.  The Incident Report, signed by Officer Riney, provides as follows:

> On January 5, 2014, at approximately 11:40 AM. I observed inmate Mackey 21282-001, exiting Saguaro Dorm.  I/M Mackey lives in Octotillo 2-1U, and did not have any reason or permission to be in Saguaro Dorm.  He said, "I just wanted to hear it from yourself."  I told him that I had already informed him and warned him myself, on several occasions has  [sic] repeatedly asked me inappropriate personal questions and has followed me around after being warned to stay away from me.  He recently asked me, "Am I wasting my time mentally and emotionally."

Docket No. 18 at 24.

In addition, in the January 5, 2014 Memorandum to Captain Gibbs, Officer Riney details a lengthy history of Mackey's unwanted attention towards her.  Docket No. 18 at 29.  Another Memorandum from Officer Salyer to Captain Gibbs concerns Officer Riney's conversations with him about her concern over Inmate Mackey's unwanted advances.  Docket No. 18 at 30.  Moreover, the inmate statement from Chaz Steptoe places him in the unauthorized area.  Docket No. 18 at 33.

It is apparent upon review of the record that the DHO's decision was based on "the greater weight of the evidence," and that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.17(g).  Thus, Mr. Mackey received all the due process protections required for the deprivation of a protected liberty interest.  The failure to preserve the video evidence, while unfortunate, does not result in a violation of Mr. Mackey's due process rights.  Therefore, he is not entitled to relief.

Nor was Mr. Mackey denied due process by the DHO's failure to have ordered a psychiatric review under 28 C.F.R. § 541.6.  This section provides as follows:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings.  If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct.  You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

As an initial matter, the provision relied upon by Applicant is not a law but a regulation.  As such, without more, its violation does not implicate a constitutional right and does not give rise to a claim cognizable on federal habeas review.  The "failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citation omitted); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam) (citations omitted).

Moreover, there is no evidence of record that the DHO should have suspended the disciplinary proceedings in order to have Applicant's mental health examined.  The DHO found the following:

> The DHO considered your request to be referred to psychology service.  You indicated that in accordance of Chapter 3 of the inmate discipline policy you wanted to be referred to psychology services.  That portion of the inmate discipline policy deals with competency and responsibility.  As to responsibility, your defense was not that you did not appreciate the seriousness or wrongfulness of your actions.  Your defense was you did not commit the acts and behavior you were accused of committing.  As to

competence, the DHO found you were very capable and fully understood the disciplinary proceedings.   You invoked the assistance of a staff representative. You requested and then waived witnesses. You were aware of your rights and articulated your defense vigorously.   You were actually able to cite the chapter regarding mental deficiencies. You were well versed in all aspects of your due process rights afforded to you during the inmate discipline process and exercised those rights.   The DHO found no basis or reason to refer you for a mental health examination.  The policy chapter you referenced allows for staff referral and not inmate referral.   You stated psychology services staff has seen you daily since you were placed in the SHU due to the allegations of Code 225 and 316.  You also acknowledged neither you nor psychology staff discussed the possibility you were either incompetent and/or not responsible.

Docket No. 1 at 13.

In his Reply, Mr. Mackey appears to assert that he was prevented from utilizing his psychology reports during his DHO hearing.  However, the DHO's findings reveal that Mr. Mackey was well aware of the charges against him and how to defend against them.  Moreover, as noted above, Mr. Mackey acknowledged that neither he nor any psychology staff discussed the possibility that he was either incompetent and/or not responsible.  Finally, Applicant's Application and Reply in the instant action does not evidence an individual who lacks either the ability to understand a disciplinary hearing or the capacity to assist in his own defense.  *See Harden v. Sherman*, 2006 WL 3814767, at *4 (W.D. Pa. Dec. 27, 2006) ("His own factual averments in the petition, however, establish that he was able to understand the proceeding and to participate in his defense" for purposes of § 541.10(b)(6)).  Thus, his due process rights were not violated by either the DHO's failure to refer Mr. Mackey for additional mental health testing or to consider his psychological reports during the DHO hearing.

## IV.  APPLICANT'S MOTION TO EXPAND THE RECORD

On March 12, 2015, Mr. Mackey filed a Motion to Expand the Record to include a

letter from BOP regarding potential settlement of his Administrative Claim No. TRT-

WXR-2014-03860.  Docket No. 20.  This letter provides as follows:

> Dear Mr. Mackey:
>
> This is in response to the amended administrative claim submitted to this office under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671, et seq.  You seek compensation for an inappropriate relationship with staff and alleged retaliation against you after the relationship, all arising from events occurring at the Federal Correctional Institutions in Safford, Arizona, and Florence, Colorado, from 2012 to 2014.
>
> In a letter dated November 13, 2014, you requested a settlement of $15,000.00 for the above-referenced amended claim.  Based upon our investigation, we are prepared to offer you $15,000.00.  If you are willing to accept this offer, a staff member will contact you in the near future to obtain your signature on the appropriate document.  Our offer is in complete settlement of any claim you may have against the United States, or any Government employee, whose act or omission may have given rise to this claim; this includes all allegations in your claim as originally submitted, and as amended.  This is neither an admission nor denial of government liability in this matter.
>
> If you decline this offer, you are afforded six months from the date of this mailing of this letter via certified mail within which to bring suit in the appropriate United States District Court.

Docket No. 20 at 3.

In its Response to this Motion, the Respondent argues that "the document is not

relevant to the issues in the petition" and "[t]hat Plaintiff may have received an offer to

settle a tort claim for money damages [has] no bearing on the issues that the Court

needs to resolve in this section 2241 action."  Docket 22 at 2.  It appears that the BOP

offered Mr. Mackey a monetary settlement of his claims that he was retaliated against

after an inappropriate relationship with staff at FCI-Safford and Florence Colorado from 2012 to 2014.  The letter provides that the settlement offer "is neither an admission nor denial of government liability in this matter."  The letter also does not identity with any specificity the factual bases of the claims that is proposes to settle.  As a result, the letter has no probative value regarding the Application and Mr. Mackey's request will be denied.

## V.  CONCLUSION

In summary, the Court finds that Mr. Mackey is not entitled to any relief and the Application will be denied.  Accordingly, it is

**ORDERED** that the Motion for Leave of Court to Expand the Record [Docket No. 20] is **DENIED**.  It is further

**ORDERED** that the Notice and Emergency Request [Docket No. 24] is **DENIED**. It is further

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is denied and this case is dismissed with prejudice.

DATED August 18, 2015.

BY THE COURT:


 s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge